IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA           )
                                   )
        v.                         )        1:22-CR-75-9
                                   )
JALEN RAYSHAUN FORD                )


**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, Chief District Judge.

This case involves a twelve-count indictment against fourteen Defendants. Among the charges is a Racketeer Influenced Corrupt Organization (RICO) conspiracy in violation of 18 U.S.C. § 1962(d) in Count I as well as a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 in Count II. (Doc. 1 at 2, 31.) Defendant Jalen Rashad Ford moves to dismiss Counts I and II on the grounds that Count I is duplicitous in violation of the Sixth Amendment and Count II is multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment. (Doc. 121 at 2, 11.) Ford also moves for a bill of particulars. (Doc. 123.) The court heard argument on the motions and requested supplemental briefing, and the motions are now ready for resolution. For the reasons set forth below, Ford's motions will be denied.

I.    **BACKGROUND**

Count I of the indictment charges Ford with participation in a RICO conspiracy in violation of 18 U.S.C. § 1962(d). (Doc. 1 at 2.) The Government alleges that Ford was a "member[] and

associate[] of an organization engaged in, among other things, acts involving murder, drug trafficking, robbery, extortion, and witness tampering." (Id. at 3.) This organization, known as the Quixk Nation or Quixk Money Gang, is allegedly a combination of offshoots of the Nine Trey Gangsters -- a subset of the United Blood Nation. (Id. at 3-4.) The Government charges numerous predicate offenses for Count I, including murder, drug trafficking, drug conspiracy, and witness tampering. (Id. at 13-14.) Count I includes a "Notice of Special Sentencing Factors," whereby the Government notified all Defendants, including Ford, that the drug conspiracy charged in Count II serves as a predicate act for the RICO conspiracy and is therefore a sentencing enhancement, increasing the otherwise potential 20-year maximum for imprisonment to life pursuant to 18 U.S.C. § 1963(a). (Id. at 28-30.)

Count II charges a conspiracy to distribute at least one kilogram of heroin, 280 grams or more of cocaine base, five kilograms or more of cocaine hydrochloride, and quantities of marijuana, 3,4-Methylenedioxymethamphetamine (MDMA), fentanyl, N-Ethylpentatylone Hydrochloride, and hydrocodone, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(i), (ii), (iii), 841 (B)(1)(C), 841(b)(1)(D), and 846. Given the quantities of controlled substances charged for heroin, cocaine base, and cocaine hydrochloride, punishment carries a potential maximum

imprisonment sentence of life. Thus, if a jury convicts Ford of both the RICO conspiracy and drug conspiracy, he faces the potential of two life sentences.

## II. ANALYSIS

### A. Motion to Dismiss Count II on Multiplicity Grounds

Ford moves to dismiss Count II of the indictment on the ground it is multiplicitous of the charge in Count I. (Doc. 121.) He contends that the indictment impermissibly charges both an "enhanced RICO violation and the offense supporting the enhancement." (Doc. 191 at 2.) Ford does not argue that a defendant cannot be charged with and sentenced for both a RICO conspiracy and a predicate offense for that conspiracy. (Doc. 191.) Instead, he contends that where the Government seeks to enhance the RICO punishment with one of the statutory offenses that increase the penalty to life imprisonment, the RICO offense "encompasses" that predicate offense such that the two are the "same offense" under Blockburger v. United States, 284 U.S. 299 (1932). (Doc. 191 at 7-8.) Because the drug conspiracy is subsumed within the RICO charge, Ford continues, Count II is multiplicitous (i.e., the Government must prove the drug conspiracy to meet its burden for the enhanced RICO conspiracy), and the indictment violates the Double Jeopardy Clause of the Fifth Amendment. (Doc. 191 at 2, 4.) Ford maintains that Congress did not intend to punish both an enhanced RICO violation and the

3

enhancing predicate.  (Doc. 191 at 2).  Ford contends that the Government must choose between proceeding on Count I or Count II, but not both.

The Government contends that Count I and Count II are not multiplicitous for two reasons.  (Doc. 150 at 19-20.)  First, the elements of a RICO conspiracy differ from those of a drug conspiracy.  Thus, charging the two separately does not fail the Blockburger test.  (Id.)  Second, the Government argues, even if the elements of the offenses were the same, Congress intended to penalize the crimes cumulatively such that there is no double jeopardy violation.  (Id.)

The Double Jeopardy Clause of the Fifth Amendment mandates that no "person [shall] be subject for the same offence to be put twice in jeopardy of life or limb."  U.S. Const. amend. V.  This "protects against multiple punishments for the same offense."  North Carolina v. Pearce, 395 U.S. 711, 717 (1969).  "It does not, however, prohibit the legislature from punishing the same act or course of conduct under different statutes."  United States v. Ayala, 601 F.3d 256, 265 (4th Cir. 2010).  "Instead, the Double Jeopardy Clause prevents courts from imposing cumulative sentences unless Congress intended to authorize such multiple punishment."  United States v. Palacios, 982 F.3d 920, 924 (4th Cir. 2020).

To determine whether two crimes constitute the "same offense" for double jeopardy purposes, courts apply the test from

4

Blockburger, which provides that two crimes are the same unless "each provision requires proof of a fact which the other does not." 284 U.S. at 304. Two statutes define the same offense when "one is a lesser included offense of the other." Rutledge v. United States, 517 U.S. 292, 297 (1996). Thus, the Double Jeopardy Clause treats two offenses as one when "conviction of a greater crime . . . cannot be had without conviction of the lesser crime." Harris v. Oklahoma, 433 U.S. 682, 682-83 (1977). When the offenses are the same under Blockburger, "cumulative punishment [cannot] be imposed under the two statutes" without "clear indication of contrary legislative intent." Missouri v. Hunter, 459 U.S. 359, 367 (1983). Put another way, the Supreme Court has repeatedly emphasized that Blockburger is "a tool of statutory construction used to determine legislative intent rather than a constitutional 'litmus test' that imposes a conclusive presumption of law." United States v. Kragness, 830 F.2d 842, 863 (8th Cir. 1983) (citing Garrett v. United States, 471 U.S. 773, 778-79 (1985); Missouri v. Hunter, 459 U.S. 359, 366 (1983)).

It is undisputed that a RICO conspiracy under § 1962(d) and a conspiracy to distribute controlled substances under § 846 constitute different offenses. The elements of a RICO conspiracy in violation of 18 U.S.C. § 1962(d) are "(1) that an enterprise affecting interstate commerce existed; (2) that each defendant knowingly and intentionally agreed with another person to conduct

5

or participate in the affairs of the enterprise[;] and (3) that each defendant knowingly and willfully agreed that he or some other member of the conspiracy would commit at least two racketeering activities." United States v. Simmons, 11 F.4th 239, 254 (4th Cir. 2021) (citations and quotations omitted). The penalty provision for a RICO conspiracy, 18 U.S.C. § 1963(a), provides that "[w]hoever violates any provision of section 1962 . . . shall be . . . imprisoned not more than 20 years (or for life if the violation is based on racketeering activity for which the maximum penalty includes life imprisonment)." In contrast, a conviction for conspiracy to distribute controlled substances under 21 U.S.C. § 846 requires proof of "(1) an agreement between two or more persons to engage in conduct that violates a federal drug law . . .; (2) the defendant's knowledge of the conspiracy; and (3) the defendant's knowing and voluntary participation in the conspiracy." United States v. Hickman, 626 F.3d 756, 763 (4th Cir. 2010). Neither crime requires proof of the same elements of the other.

While a violation of the RICO provision pursuant to § 1962(d) carries a penalty of "not more than 20 years," 18 U.S.C. § 1963(a), the maximum penalty increases to life imprisonment "if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment," id. See also Simmons, 11 F.4th at 255 (noting that the "ordinary case" of a RICO violation

6

is twenty years' imprisonment unless coupled with a violation that carries a penalty of up to life imprisonment.)  Ford argues that by charging an <u>enhanced</u> RICO penalty seeking life imprisonment based on the drug conspiracy in Count II, the Government has made the drug conspiracy in Count II an <u>element</u> of Count I's "enhanced RICO" charge.  (Doc. 121.)  It is true that in order to obtain a conviction of a RICO conspiracy that is punishable up to life imprisonment, the Government must also prove a drug conspiracy that is also punishable up to life imprisonment.  18 U.S.C. § 1963(a); <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) (holding that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt).[1]  Assuming (without deciding), therefore, that proof of Count I constitutes proof of the same three drug predicates in Count II that support a life sentence, the court can assume that charging Counts I and II would fail the <u>Blockburger</u> test to that extent.  But this means only that the court must look

---

[1] Ford's citation to <u>Simmons</u>, <u>supra</u>, for the proposition that the indictment effectively turns the drug conspiracy into an element of the RICO conspiracy by increasing the statutory penalty is not directly on point.  As Ford notes, the Fourth Circuit only recognized the "force" of such an argument in the distinguishable context of attempting to assess whether a conviction for an enhanced RICO violation (murder) is divisible or indivisible in determining whether the enhanced crimes were crimes of violence under a categorical or modified categorical approach.  To be sure, nothing in <u>Simmons</u>, which was cited in <u>United States v. Devine</u>, 40 F.4th 139 (4th Cir. 2022) calls into question the court's analysis.

7

to congressional intent to determine whether there is a clear indication Congress intended to punish both crimes separately. <u>Hunter</u>, 459 U.S. at 367.

At first blush, Ford's argument appears premature. Count II alleges a conspiracy to distribute eight different kinds of controlled substances. However, only three of the charged drug violations, which also serve as the basis to enhance the RICO conviction, have the possibility of a life sentence: conspiring to knowingly distribute (1) one kilogram or more of heroin; (2) 280 grams or more of cocaine base; and (3) five kilograms or more of cocaine hydrochloride. If a jury does not convict on at least one of these three grounds, Ford's contentions about double jeopardy are moot. In this sense, then, Ford's challenge is somewhat speculative, and a court ordinarily need not decide this issue definitively before trial. <u>See, e.g.</u>, <u>United States v. Luskin</u>, 926 F.2d 372, 377 (4th Cir. 1991) (explaining how the Double Jeopardy Clause does not prohibit a prosecutor from proceeding on multiple counts before conviction where a defendant challenged whether he could be subject to multiple punishments for the same conduct); <u>United States v. Invidior Inc.</u>, 451 F. Supp. 3d 553, 560-62 (W.D. Va. 2020) (declining to decide pretrial whether counts were duplicitous but allowing defendants to "raise the matter again" if the government failed to offer sufficient evidence that the counts were not); <u>United States v. Johnson</u>, 130 F.3d 1420,

1426 (10th Cir. 1997) (stating that "[a] decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court" and finding no abuse of discretion in court's denial of pretrial motion on that basis).

Moreover, Ford fails to demonstrate that the withholding of a decision on multiplicity (and duplicity) grounds would prejudice him. The Government would likely present the same evidence to prove the enhanced RICO offense in Count I as it would to prove the drug conspiracy that supports a life punishment in Count II. See United States v. Colton, 231 F.3d 890, 910 (4th Cir. 2000) (denying motion for new trial even where the indictment was multiplicitous as the court "perceived no prejudice because exactly the same evidence was offered to prove [all of the multiplicitous counts]").

Ford argues, nevertheless, that he is entitled to know what charges are properly lodged against him and that a ruling on his motion now affects his substantial rights. He contends that the charges he faces "fundamentally shape the defense of his case," including "trial strategy to negotiating potential resolutions," and that "defending against two counts is inherently different than defending one count" where both involve potential life sentences. (Doc 191 at 11.) While the merit of that position is tenuous at best, see United States v. Salad, 907 F. Supp. 2d 743,

750 (E.D. Va. 2012) (denying as premature any order on defendant's motion to dismiss federal kidnapping charge as lesser included offense of federal hostage taking charge, and deferring decision until after guilt or innocence was determined), but recognizing that the timing for addressing the matter lies within the court's sound discretion, the court is not persuaded at this stage that Ford's claims require dismissal.

As many courts have recognized, in passing RICO, Congress chose to create a new crime of "racketeering," with the intent to punish RICO crimes separately because of the nature of the harm of organized crime. In so doing, even where drug conspiracies charged separately from RICO conspiracies were found to fail Blockburger, the courts long found no double jeopardy violation. For example, in United States v. White, the D.C. Circuit concluded that "although the drug conspiracy is a lesser included offense of the RICO conspiracy, cumulative punishments are authorized." 116 F.3d 903, 932 (D.C. Cir. 1997). In United States v. Kragness, the court concluded that the RICO conspiracy charge and the non-RICO conspiracy charge were the same offense under Blockburger, but "Congress nonetheless intended to allow multiple punishments for RICO conspiracies and conspiracies to commit the underlying predicate offenses." 830 F.2d 842, 864 (8th Cir. 1987). See also United States v. Garcia, 754 F.3d 460, 474 (7th Cir. 2014) (punishing RICO conspiracy and extortion conspiracy separately);

United States v. Ayala, 601 F.3d 256, 265 (4th Cir. 2010) (punishing RICO conspiracy and VICAR conspiracy separately); United States v. Luong, 393 F.3d 913, 915-17 (9th Cir. 2020) (punishing RICO conspiracy and Hobbs Act robbery conspiracy separately); United States v. Deshaw, 974 F.2d 667, 671-72 (5th Cir. 1992) (punishing RICO conspiracy and drug conspiracy separately); United States v. Boldin, 772 F.2d 719, 729 (11th Cir. 1985) (same); United States v. Thomas, 757 F.2d 1359, 1370-71 (2d Cir. 1985) (same).[2]

Most recently, in United States v. Devine, which involved "enhanced" RICO charges, the Fourth Circuit affirmed Congress' intent to punish RICO offenses separately from predicate offenses. 40 F.4th 139 (4th Cir. 2022). There, the Government charged two defendants, Demetrice Devine and Brandon Mangum, with RICO conspiracy pursuant to § 1962(d) and conspiracy to distribute cocaine and marijuana in violation of 21 U.S.C. § 846. Each was also charged with separate murders, aiding and abetting murder during and in relation to a crime of violence in violation of 18 U.S.C. §§ 2 and 924(j) (firearms murder), and murder in aid of racketeering in violation of 18 U.S.C. §§ 2 and 1959(a)(1) (VICAR murder). Id. at 145. Both defendants were convicted. Finding that Devine had also ordered the murder Mangum committed, the

---

[2] It is unclear to what extent any of these cases involved claims of "enhanced" RICO conspiracy.

Case 1:22-cr-00075-UA   Document 205   Filed 09/06/22   Page 11 of 24

district court sentenced Devine to four consecutive life sentences, plus 240 months. Id. at 146. Mangum was sentenced to three consecutive life sentences, plus 240 months. Id.

Devine and Mangum both challenged their convictions for drug conspiracy, firearms murder, and VICAR murder as a violation of double jeopardy. They claimed that these convictions were for the "same offense" as RICO conspiracy. Id. at 150. Like Ford, Devine claimed that the predicate convictions, such as VICAR murder, were "subsumed by RICO conspiracy." Id. In noting that the circuit courts have been "repeatedly faced with a dizzying variety of double jeopardy challenges to various combinations of RICO-related offenses," the Fourth Circuit observed that "time and time again these challenges have been rejected." Id. at 151 (citing numerous circuit cases). As to Devine and Mangum, the Fourth Circuit rejected their arguments, stating that VICAR murder, drug conspiracy, and firearms murder each constitute a separate offense from RICO conspiracy. Id. (citing Ayala, 601 F.3d at 265-66 (holding that VICAR murder conspiracy constitutes a separate offense from RICO conspiracy) and United States v. Love, 767 F.2d 1052, 1062 (4th Cir. 1985) (holding that drug conspiracy constitutes a separate offense from RICO conspiracy)).

Ford concedes that in Devine the Government charged the defendants with both enhanced RICO conspiracy and the underlying predicate acts. (Doc. 191 at 10 n. 2.) He contends, however,

12

that because the Fourth Circuit did not specifically address the enhanced RICO argument that he raises, the matter is not resolved. (Id.) But while the Fourth Circuit may not have expressly addressed Ford's "enhanced" versus "unenhanced" argument, the court clearly found no problem affirming the convictions, and the court's logic disposes of Ford's contention in this case. As the court stated, "[b]ecause 'the power to define criminal offenses . . . resides wholly with the Congress,' our only task 'is to determine whether Congress intended to impose multiple punishments.'" Devine, 40 F.4th at 150 (citing Ayala, 601 F.3d at 264-65). Citing legislative intent, the court noted that

> Congress intended separate punishment for RICO conspiracy and these offenses. RICO's purpose is to "seek the eradication of organized crime in the United States . . . by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in organized crime."

Id. (citing Pub. L. No. 91-452, 84 Stat. 922, 923 (1970)). The court found it "clear that Congress intended to provide additional punishments for involvement in organized crime." Id. at 150. As the court noted, "each statute is directed at a separate but related evil." Id. at 151. RICO conspiracy "targets those engaged in organized crime generally, while firearms murder is aimed at combatting the scourge of gun violence, VICAR murder punishes those 'willing to commit violence in order to bolster their positions with [RICO enterprises],' and drug conspiracy aims to specifically

13

deter the trafficking of narcotics." Id. (citations omitted).

Importantly for present purposes, the Devine court cited
RICO's provision that "cautions that 'nothing in it shall supersede
any provision of Federal . . . law imposing criminal penalties .
. . in addition to those provided for here.'" Id. at 151. In the
RICO statute, Congress plainly intended to punish an offender with
a maximum of twenty years, unless there was an underlying enhancing
predicate offense that carried life imprisonment. 18 U.S.C.
§ 1963(a). If an enhancing predicate exists, then a court may
impose a life sentence under RICO. Ford's reading would vitiate
RICO's stated intent, forcing the Government to elect between
charging a defendant with either the enhancing provision pursuant
to § 1963(a) or the predicate offense that also serves as an
enhancement, but not both.

This result is consistent with the law of other circuits.
For example, in United States v. Morgano, the Defendants were
charged with extortion, interstate travel, gambling violations,
and a RICO violation. 39 F.3d 1358, 1365 (7th Cir. 1994). The
extortion, interstate travel, and gambling violations "served as
predicate acts supporting the RICO conviction [and] serv[ed] to
enhance the RICO sentence." Id. The Morgano defendants received
consecutive life sentences for the RICO offense and the separately
charged predicate acts. Id. The court rejected the defendants'
argument that they were impermissibly punished twice for the same

14

conduct: "Once when sentenced for committing [the predicate offenses], and again when these same acts were employed to determine the consecutive, not concurrent, . . . RICO sentences." Id. at 1366. The Seventh Circuit agreed that the predicate offenses served two purposes: "First, they enhanced the RICO sentence; second, they produced separate, consecutive sentences."[3] Id. See also United States v. Warneke, 310 F.3d 542 (7th Cir. 2002) (noting that the "maximum penalty following a RICO conviction depends on the maximum penalty for the most serious predicate offense"); United States v. Brown, 973 F.3d 667 (7th Cir. 2020) (noting that defendants were properly sentenced under an enhanced RICO charge when a jury convicted them of the RICO charge and aggravated first-degree murder).

Ford relies heavily on United States v. Gardner, 417 F. Supp. 2d 703 (D. Md. 2006), which found separate charges of RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Count 1) and conspiracy to commit murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a) (VICAR murder) (Counts 7 and 9) to be multiplicitous. To be sure, the VICAR murder conspiracies were charged as predicate acts for the RICO conspiracy. Id. at 706 n.3. However, this is the only case in the nation to which

---

[3] Though some of the predicate acts were found by special jury interrogatory while others were found by the court by a preponderance, 39 F.3d at 1365-66, as the case was decided before Apprendi, any Apprendi issue that might have arisen does not alter the court's double jeopardy analysis.

Ford points that reaches this conclusion and is contrary to all other authority, including _Devine_. _See, e.g._, _United States v. Basciano_, 599 F.3d 184, 198 (2d Cir. 2010) (declining to follow _Gardner_); _United States v. Savage_, 2012 WL 1994736, at *14 (E.D. Pa. 2012) (finding _Gardner_ "an outlier" and its reasoning "flawed" because its fact-based approach was previously expressly overruled by the Supreme Court in _United States v. Dixon_, 509 U.S. 688, 704 (1993)). The court declines to follow it.

Here, the predicate drug conspiracy charge against Ford serves two separate purposes: (1) it enhances his RICO conspiracy charge and potential sentence, thus punishing the use of a racketeering organization committing certain significant drug conspiracies to fund the organization; and (2) it independently criminalizes and punishes the drug conspiracy. This does not violate the Double Jeopardy Clause, as Congress clearly intended such a result. Therefore, Ford's motion to dismiss Count II on multiplicity grounds is denied.

**B. Motion to Dismiss Count I on Duplicity Grounds**

An indictment is duplicitous when "it charges two offenses in one count, creating 'the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count.'" _United States v. Robinson_, 855 F.3d 265, 269 (4th Cir. 2017) (citing _United States v. Robinson_, 627 F.3d 941, 957 (4th Cir. 2010)). This raises Sixth Amendment concerns because a jury

Case 1:22-cr-00075-UA    Document 205    Filed 09/06/22    Page 16 of 24

may not "unanimously agree on the offense that the defendant committed." (Id.) (citing United States v. Kakos, 483 F.3d 441, 444 (6th Cir. 2007)).

Ford contends that "[t]he RICO count here is so broad that it sweeps in multiple sub-conspiracies." (Doc 121 at 13.) He argues that "the Indictment's attempt to charge [him] with multiple conspiracies in a single-conspiracy count warrants dismissal." (Id. at 14.) Ford cites little authority to support his argument. What he does cite is distinguishable. In United States v. Eury, an indictment was found to be duplicitous when it identified two distinct schemes to defraud the United States in one count. 2015 WL 1861807 (M.D.N.C. Apr. 23, 2015). Eury, however, did not involve a RICO conspiracy. Also, there was little overlap in the conspirators; minimal, if any, timing connection between the two schemes; and different methods used by different actors throughout the schemes. Id. at *6.

A RICO conspiracy charge is not duplicitous when it "allege[s] only one enterprise — individuals associated in fact who share a 'common purpose,' and that the defendants "agree to participate in certain 'types of predicate racketeering acts.'" United States v. Raniere, 384 F. Supp. 3d 282, 304 (E.D.N.Y. 2019) (citing Boyle v. United States, 556 U.S. 938, 946 (2009) and United States v. Applins, 637 F.3d 59 (2d Cir. 2011)). The predicate acts underlying a RICO conspiracy may also be conspiracies. United

17

States v. Ruggiero, 726 F.2d 913, 923 (2d Cir. 1984), abrogated on other grounds by Salinas v. United States, 522 U.S. 52 (1997) ("[A] RICO conspiracy . . . supported by predicate acts of racketeering activity that in themselves are conspiracies" does not "violate the principle [that] prohibits conviction of multiple conspiracies under an indictment charging a single conspiracy.") Further, "charging multiple conspiracies under a single RICO enterprise is permissible." United States v. Napier, 884 F.2d 581 (6th Cir. 1989).

RICO was passed to "eliminate" the problem of the inability to prosecute organized crime because a "common objective" could not be inferred from the highly diverse crimes by members of a criminal enterprise. United States v. Elliott, 571 F.2d 880, 903 (5th Cir. 1978). An indictment charging a RICO conspiracy may properly include predicate conspiracies in a single count so long as there is an "overall objective." Id. See also United States v. Sims, 2013 WL 1403212, at *2 (D.S.C. Apr. 5, 2013) (citing United States v. Arnoldt, 947 F.2d 1120 (4th Cir. 1991)). The "hallmarks" of a single RICO enterprise are continuity, unity, shared purpose, and identifiable structure. United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994).

Here, the Government properly pleads a single conspiracy that is not duplicitous. (Doc. 1.) The indictment outlines the QN/QMG organization and charges that the organization was involved in

18

numerous predicate activities, including murder, drug trafficking, and robbery. (Id. at 3.) The Government highlights the various leadership roles, subsets, and guidelines involved in this single conspiracy. (Id.) The indictment also pleads the unique code used by members, the distinguishing characteristics of the gang, and the members' disciplinary rules, as well as detailing the common purpose, methods, and members involved in the RICO conspiracy. (Id. at 4-12.) Like scores of RICO indictments that are proper, it alleges a drug conspiracy as a predicate act. See, e.g., United States v. Barronette, __ F.4th __, 2022 WL 3452694, at *2 (4th Cir. 2022) (affirming RICO conspiracy conviction that included several conspiracy predicates, including narcotics); United States v. Gross, 199 F. App'x 219 (4th Cir. 2006) (affirming RICO conspiracy conviction and predicate narcotics conviction for at least one defendant).[4]

Here, the indictment properly charges an overall objective for the alleged conspiracy to survive this duplicity challenge. Ford's motion to dismiss the indictment for being duplicitous will be denied.

## C. Motion for a Bill of Particulars

Ford moves for an order requiring the Government to file a

---

[4] Unpublished decisions of the Fourth Circuit are not precedential but are cited for the persuasive authority of their reasoning. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

Case 1:22-cr-00075-UA   Document 205   Filed 09/06/22   Page 19 of 24

bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). (Doc. 123.) In specific, Ford argues that the indictment fails to specify whether it alleges one or many conspiracies, fails to apprise him of the people with whom he is alleged to have conspired, and alleges a conspiracy "with no outer bound." (Doc. 123 at 7-10.) The Government opposes the motion, contending that the indictment provides more factual allegations than required by law. (Doc. 150 at 3-12.) For the reasons below, Ford's motion will be denied.

"A bill of particulars is appropriate when an indictment fails (1) to provide adequate information to allow a defendant to understand the charges and (2) to avoid unfair surprise." United States v. Willock, 682 F. Supp. 2d 512 (D. Md. 2010) (citing United States v. American Waste Fibers Co., 809 F.2d 1044, 1047 (4th Cir. 1987)). But "a bill of particulars is not to be used to provide detailed disclosure of the Government's evidence in advance of trial." Id. (citing United States v. Automated Med. Labs., Inc., 770 F.2d 399, 405 (4th Cir. 1985)). A bill of particulars is unnecessary where the information can be found in the indictment or is available through discovery. United States v. Amend, 791 F.2d 1120, 1125-26 (4th Cir. 1986). Moreover, a court should not direct the Government to reveal the details of its evidence or the precise manner in which it intends to make its case. United States v. Cuong Gia Le, 310 F. Supp. 2d 763, 781 (E.D. Va. 2004). Whether

Case 1:22-cr-00075-UA   Document 205   Filed 09/06/22   Page 20 of 24

to grant a bill of particulars rests within the broad discretion of the trial court. <u>Automated Med. Labs., Inc.</u>, 770 F.2d at 405.

Here, the indictment lays out in detail the charges against Ford. As the Government charges in the indictment and notes in its brief (Doc. 150), Ford is charged with RICO conspiracy pursuant to 18 U.S.C. § 1962(d) and a conspiracy to distribute multiple controlled substances pursuant to 21 U.S.C. §§ 841 and 846. Count I sets out substantial factual allegations about the alleged conspiracy of the QN/QMG conspirators; the purpose, means, and methods of the enterprise; and the alleged pattern of racketeering by Ford and his co-conspirators. The indictment as to Ford alleges specific drug dealing and shooting activity as a QN/QMG enterprise gang member. In particular, paragraph 24(a) through 24 (lll) of the indictment set out 89 separate overt acts with specific dates. (Doc. 1 ¶ 24.) Among the multiple overt acts are several naming Ford. (<u>Id.</u> ¶¶ 24(oo) (alleging Ford's May 9, 2017 shooting of a female passenger in a Ford Mustang vehicle), 24(ss) (alleging Ford's August 12, 2017 sale of one gram of heroin), 24(tt) (alleging Ford's August 14, 2017 sale of one gram of crack cocaine), 24(uu) (alleging Ford's August 17, 2017 arrest in a controlled buy where he possessed with intent to sell 1.25 grams of heroin), and 24(dddd) (alleging Ford's January 4, 2021 conviction for possessing with intent to distribute heroin and cocaine and possession of a Mossberg 5.56 caliber rifle with rounds

Case 1:22-cr-00075-UA   Document 205   Filed 09/06/22   Page 21 of 24

of .45 caliber ammunition).) The indictment also alleges special sentencing factors as to Ford, including a drug conspiracy since 2012 to distribute one kilogram or more of heroin, 280 grams or more of cocaine base, and five kilograms or more of cocaine hydrochloride. (Id. at 28-30.) Count II similarly alleges the names of the conspirators, the time frame of the conspiracy (from June 2012 through date of indictment), and the controlled substances and amounts allegedly distributed. (Id. at 31-11.) By specifying the time of the conspiracy, the nature of the enterprise and mode of operation, as well as its principal actors and specific types of predicate crimes, the indictment adequately enables Ford to prepare a defense. See, e.g., United States v. Crockett, 979 F.2d 1204, 1208-09 (7th Cir. 1992) (rejecting claim that indictments charging violation of § 1962(d), as opposed to §§ 1962(a)-(c), must identify specific predicate acts in which the defendant was involved). Thus, Ford has not demonstrated that the indictment fails to provide him sufficient information to understand the charges against him and the identity of his co-conspirators.

The Government has also provided substantial discovery under its open file practice in this district - over 700 gigabytes of data – including police reports, body camera videos, recorded interviews, redacted witness statements, FBI materials, telephone data, and social media accounts of Ford and over 25 of his alleged

QN/QMG associates. (Doc. 150 at 4.) The Government also committed at the July 27, 2022 status hearing to provide redacted <u>Jencks</u> material 30 days before trial, even though it is not required to do so. At various Defendants' request, the court appointed a discovery coordinator to organize and manage the volume of discovery in this case. (Doc. 131.) The latest report indicates that the coordinator is making significant progress in preparing the discovery for use by the Defendants. (Doc. 202.) Trial is presently set for early 2023.

Ford contends that the large amount of discovery in this case, which covers several years of conduct, "obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial." (Doc. 123 at 10.) This is unavailing. <u>See, e.g.</u>, <u>United States v. Stroop</u>, 121 F.R.D. 269 (E.D.N.C. 1988) (denying a bill of particulars when the indictment and the substantial discovery involved gave defendant adequate notice of the charges); <u>United States v. Sattar</u>, 314 F. Supp. 2d 279, 318-19 (S.D.N.Y. 2004) (denying a bill of particulars when the government provided a detailed indictment and "voluminous" discovery such that the defendant had adequate notice of charges against him.)

For these reasons, Ford's motion for a bill of particulars will be denied.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that Ford's motion to dismiss Counts I and II (Doc. 121) is DENIED;

IT IS FURTHER ORDERED that Ford's motion for a bill of particulars (Doc. 123) is DENIED.


                                    /s/ Thomas D. Schroeder
                                 United States District Judge

September 6, 2022